UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/22/2016
```

CECELIA CATHERINE MACK,            :

              Plaintiff,            :

       -against-            :

PARIS MAINTENANCE CO. INC.         :
and 32BJ SEIU,

                :

          Defendants.
-----------------------------------------------------x

**REPORT AND
RECOMMENDATION
TO THE HONORABLE
GEORGE B. DANIELS**[*]

14cv6955-GBD-FM

**FRANK MAAS,** United States Magistrate Judge.

      Pro se plaintiff Cecelia Catherine Mack ("Mack") brings this action under
Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), against
Paris Maintenance Co. Inc. ("Paris"), her former employer, and the Service Employees
International Union Local 32BJ ("Union"), her collective bargaining representative
(together, the "Defendants").  Mack alleges that Paris discriminated and retaliated against
her on the basis of her race and gender.  Mack further alleges that the Union
discriminated against her by failing to bring her grievances about this treatment to
arbitration.  (See ECF No. 1 ("Complaint" or "Compl.")).

      Following the close of discovery, both Paris and the Union have moved for
summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (ECF

---

    [*]    Jordan Reisch, a student at Harvard Law School, provided substantial assistance
in the preparation of this Report and Recommendation.

Nos. 26, 32).  For the reasons set forth below, the motions should be granted and this action dismissed.

I.    Background[2]

    A.    Relevant Facts

        Unless otherwise noted, the following facts either are undisputed or are set forth in the light most favorable to Mack:

        Paris is a corporation that provides cleaning and maintenance services for commercial buildings in New York City.  (Loiodice Aff. ¶ 3; Kartzian Decl. ¶ 3).  The Union is the collective bargaining representative for the service employees of Paris. (Loiodice Aff. ¶ 6; Kartzian Decl. ¶ 4).  Mack is a Black female who was hired by Paris as a janitor in 2001.  (Loiodice Aff. ¶ 7; Union 56.1 Stmt. ¶¶ 3-4; see also ECF No. 45 ("Pl.'s Paris Resp.")[3] at 1).  From 2001 to early 2010, Mack worked for Paris in several different commercial buildings without incident.  (Loiodice Aff. ¶ 8; Pl.'s Paris Resp. at 1).

---

[2]    The citations in this Report and Recommendation include the following:  ECF Nos. 27-1, 39-1 (Tr. of Pl.'s Dep., dated Apr. 2, 2015 ("Tr.")); ECF No. 27-2 (Aff. of Charles Loiodice, dated June 5, 2015 ("Loiodice Aff.")); ECF No. 29 ("Paris' Rule 56.1 Statement ("Paris 56.1 Stmt.")); ECF No. 34 (Decl. of Ingrid Nava, dated June 19, 2015 ("Nava Decl.")); ECF No. 35 (Decl. of Eyad Asad, dated June 19, 2015 ("Asad Decl.")); ECF No. 36 (Decl. of Mary Kartzian, dated June 19, 2015 ("Kartzian Decl.")); ECF No. 39 (Union's Rule 56.1 Statement ("Union 56.1 Stmt.")).

[3]    ECF No. 45, filed by the Union as a courtesy, contains two separate unsworn documents prepared by Mack which are captioned as "Rebuttals" to the Defendants' summary judgment motions.  They are referred to hereinafter as "Pl.'s Paris Resp." and "Pl.'s Union Resp.," with citations to Mack's pagination of the individual documents.

In March 2010, Paris transferred Mack to a Borough of Manhattan Community College ("BMCC") building located at 70 Murray Street. (Loiodice Aff. ¶ 8; Union 56.1 Stmt. ¶ 5; Pl.'s Paris Resp. at 1). In June 2011, Mack was accused of refusing to allow several BMCC students to use a bathroom after she cleaned it. (Tr. 27-30; Loiodice Aff. ¶ 14; Union 56.1 Stmt. ¶ 6). The students claimed that, during this incident, Mack swung a broom at them. (Kartzian Decl. ¶ 17; Union 56.1 Stmt. ¶ 6). As a result, BMCC demanded that Mack be removed from the facility. (Id.). Paris initially opposed Mack's removal, but later relented after BMCC cited contract language requiring Paris to accede to BMCC's request. (See ECF 27-6 (letter from BMCC to Paris, dated June 9, 2011 ("BMCC Letter")); ECF No. 37-1 at 2 (letter from Paris to Mack, dated June 17, 2011 ("Paris Letter"))). Paris then terminated Mack's employment. (Paris Letter). In response, Mack filed a grievance with the Union. (Tr. 30-33; Kartzian Decl. ¶ 17; Union 56.1 Stmt. ¶ 7).

In July 2011, while Mack's Union grievance was pending, Paris placed her in another position at BMCC's Brooklyn campus, located at 4 Metrotech Center ("Metrotech Center"). (Loiodice Aff. ¶ 15; Kartzian Decl. ¶ 17; Union 56.1 Stmt. ¶ 7; see also ECF No. 37-1 at 4 (Union Stipulation of Agreement, dated Sept. 10, 2012 ("Union Stipulation"))). In September 2012, the grievance was resolved consensually by rescinding Mack's termination, making her position at Metrotech Center permanent without loss of seniority, and awarding her the wages she lost during the period from her termination to the beginning of that position. (Union Stipulation; see also Kartzian Decl.

3

¶ 17; Union 56.1 Stmt. ¶ 7; Pl.'s Paris Resp. at 2 n.1).  Pursuant to the Union Stipulation, Paris also could not rely upon the June 2011 BMCC incident as a basis for progressive disciplinary action.  (Union Stipulation; Pl.'s Paris Resp. at 2 n.1).

Following the Union Stipulation, Mack accumulated numerous disciplinary infractions at Metrotech Center.  She received written warnings for poor job performance on March 15 and 21, June 6, and October 18, 2012, as well as April 24, 2013, and written warnings for excessive absenteeism on March 7, 2012, and June 6, 2013.  (Loiodice Aff. ¶¶ 16, 20, 24, 28, 32, 40, 48; Union 56.1 Stmt. ¶¶ 8-12, 14, 16; see also ECF Nos. 27-7 through 27-11, 27-13, 27-15 (related grievances)).[4]  She also received two three-day suspensions following incidents of poor job performance on April 10 and May 13, 2013.  (Loiodice Aff. ¶¶ 36, 44; Union 56.1 Stmt. ¶¶ 13, 15; see also ECF Nos. 27-12, 27-14 (related grievances)).

Mack maintains that many of these infractions were based on incidents fabricated by Paris, and in particular by the Metrotech Center building supervisor, Primo Beltramello ("Beltramello").  (Tr. 55-56, 65, 68-69, 95-96; Loiodice Aff. ¶ 52; Pl.'s Paris Resp. at 2; see also Compl. at 7-8).  Mack therefore filed a grievance with the Union on most, if not all, the occasions she was disciplined.  (Tr. 35-37, 43-46, 52-55, 63-64, 76-77, 81-83, 93-94; Loiodice Aff. ¶¶ 17, 21, 25, 29, 33, 37, 41, 45, 49).  The Union did not escalate any of these grievances to arbitration.  (Id.).  Although Mack contends that the

---

[4]      Mack also received a written warning for poor job performance on November 18, 2010, prior to her transfer to Metrotech Center.  (Loiodice Aff. ¶ 10; see also ECF No. 27-5 (related grievance)).

disciplinary actions were motivated by discriminatory animus, she never filed related complaints under Paris' Equal Employment Opportunity Policy ("EEO Policy"),[5] (Loiodice Aff. ¶¶ 12, 18, 22, 26, 30, 34, 38, 42, 46, 50), or charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"), the New York State Division of Human Rights ("NYSDHR"), or the New York City Commission on Human Rights ("NYCCHR"), (id. ¶¶ 13, 19, 23, 27, 31, 35, 39, 43, 47, 51).

On July 18, 2013, Beltramello observed Mack and another Paris employee, Ivy Rodriguez ("Rodriguez"), walking toward Metrotech Center carrying shopping bags after they had clocked in for the start of their shifts.  (Loiodice Aff. ¶ 52; Kartzian Decl. ¶¶ 7-8; Union 56.1 Stmt. ¶ 17).  In response, Paris suspended both Mack and Rodriguez for three days for being off post.  (Loiodice Aff. ¶ 54; Kartzian Decl. ¶ 10; Union 56.1 Stmt. ¶ 19; see also ECF No. 27-16 (notice of suspension dated July 22, 2013)).  On July 22, 2013, after investigating the incident, Paris terminated Mack effective July 26, 2013. (Loiodice Aff. ¶ 55; Kartzian Decl. ¶ 11; Union 56.1 Stmt. ¶ 19; see also ECF No. 27-17 (termination letter dated July 22, 2013)).  Rodriguez, however, was permitted to return to work after her three-day suspension.  (Loiodice Aff. ¶ 55 n.2; Kartzian Decl. ¶ 11; Union 56.1 Stmt. ¶ 19).

---

[5]     Under the EEO Policy, Paris prohibits consideration of race or gender in employment decisions at any level, retaliation is strictly prohibited, and any complaints must result in an immediate, full, and impartial investigation.  (Loiodice Aff. ¶ 4; see also ECF 27-3 (copy of EEO Policy)).

Not surprisingly, Mack filed yet another grievance with the Union protesting her termination.  (Tr. 117; Loiodice Aff. ¶ 56; Kartzian Decl. ¶ 12; Union 56.1 Stmt. ¶ 21).  On August 26, 2013, the Union once again declined to escalate her grievance to arbitration.  (Loiodice Aff. ¶ 56; Kartzian Decl. ¶ 13; Union 56.1 Stmt. ¶ 22; see also ECF No. 35-1 (letter from the Union to Mack, dated Aug. 26, 2013 ("Union Letter"))).  On September 4, 2013, Mack appealed to the Union's General Appeals Board ("GAB"), (Compl. at 7-9; Loiodice Aff. ¶ 57; Kartzian Decl. ¶ 20; see also ECF No. 35-2 (GAB appeal, dated Sept. 4, 2013)), which upheld the Union's decision on November 13, 2013, (Tr. 119; Loiodice Aff. ¶ 57; Kartzian Decl. ¶ 21; Union 56.1 Stmt. ¶ 24; see also ECF No. 35-3 (letter from GAB to Mack, dated November 13, 2013 ("GAB Letter"))).  Thereafter, the Union's Executive Board voted to uphold the GAB's decision.  (Tr. 164; Kartzian Decl. ¶ 21; see also ECF No. 35-4 (letter from the Executive Board to Mack, dated Nov. 21, 2013 ("Executive Board Letter"))).  Both the GAB and the Executive Board concluded that Mack lacked "sufficient evidence to support a meritorious claim of discrimination."  (GAB Letter; see also Executive Board Letter).

Although the GAB advised Mack that she could file a claim under Paris' EEO Policy, Mack did not do so.  (GAB Letter; Loiodice Aff. ¶ 58).  Instead, on or about September 20, 2013, Mack filed a charge of discrimination with the EEOC, alleging that Paris had discriminated against her and had terminated her in retaliation for her successful June 2011 Union grievance.  (Loiodice Aff. ¶ 59; Union 56.1 Stmt. ¶ 26; see also ECF

No. 34-1 ("EEOC Charge")).  Mack did not name the Union in her EEOC Charge.  (Id.; see also Nava Decl. ¶ 4).

B.    Procedural History

On June 4, 2014, at Mack's request, the EEOC issued a "notice of right to sue" letter.  (Compl. at 5; Loiodice Aff. ¶ 60).  On August 25, 2014, Mack then commenced this action.  (Compl.).  On June 19, 2015, following the close of discovery, (see ECF No. 24), both Paris, (ECF No. 26), and the Union, (ECF No. 32), moved for summary judgment.  As required by Local Civil Rule 56.2, both of the Defendants gave Mack notice that she was required to submit admissible evidence in support of her claims or face their dismissal without a trial.  (ECF Nos. 38, 42).  Mack mailed opposition papers to the Defendants and the Court sometime in mid-July 2015, but did not file them; consequently, the Union subsequently filed those papers via ECF as a courtesy to the Court.  (See ECF No. 45).[6]  Paris then filed a reply on July 28, 2015.  (ECF No. 43).  The motions therefore are fully submitted.

---

[6]    Despite being served twice with the notice required by Local Civil Rule 56.2, Mack's opposition papers fail to cite to any specific parts of the record.  If Mack were represented by counsel, this failure would ordinarily result in the Defendants' facts being deemed admitted.  Giannullo v. City of N.Y., 322 F.3d 139, 140 (2d Cir. 2003).  As the Second Circuit has emphasized, however, pro se litigants are entitled to "special solicitude . . . when confronted with motions for summary judgment."  Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988) (citing Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988)).  For that reason, notwithstanding a pro se plaintiff's failure to comply strictly with the Local Rules, a court "retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions."  Wali v. One Source Co., 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009); see also Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001) (court has "broad discretion to determine whether to overlook a party's failure to comply with the local court rules").  Accordingly, I have considered Mack's factual assertions to the extent that they are supported by admissible evidence.

II.     Standard of Review

        Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment

is appropriate only when "the movant shows that there is no genuine dispute as to any

material fact" based on supporting materials in the record.  Fed. R. Civ. P. 56.  "An issue

of fact is genuine if 'the evidence is such that a reasonable jury could return a verdict for

the nonmoving party.' A fact is material if it 'might affect the outcome of the suit under

the governing law.'"  Roe v. City of Waterbury, 542 F.3d 31, 35 (2d Cir. 2008) (quoting

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

        In deciding a motion for summary judgment, the Court must "view the

evidence in the light most favorable to the party opposing summary judgment and must

draw all permissible inferences" in favor of that party.  Harris v. Provident Life &

Accident Ins. Co., 310 F.3d 73, 78 (2d Cir. 2002).  To defeat a motion for summary

judgment, the nonmoving party cannot simply rely upon allegations contained in the

pleadings that raise no more than "some metaphysical doubt as to the material facts."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Rather, the

nonmoving party must offer "concrete evidence from which a reasonable juror could

return a verdict in [her] favor."  Anderson, 477 U.S. at 256.

        Assessments of credibility, choosing between conflicting versions of the

events, and the weighing of evidence are matters for the jury, not for the Court.  Fischl v.

Armitage, 128 F.3d 50, 55 (2d Cir. 1997); see also Fed. R. Civ. P. 56(e) advisory

committee's note to 1963 amendment.  Thus, "[t]he court's function is not to resolve

8

disputed issues of fact but only to determine whether there is a genuine issue of material fact to be tried." Fischl, 128 F.3d at 55.

"[T]rial courts must be especially chary" when considering summary judgment motions in discrimination cases, because "the employer's intent is ordinarily at issue" in such cases. Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 87 (2d Cir. 1996). Nevertheless, "[e]ven in the discrimination context, . . . a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 101 (2d Cir. 2010) (citation omitted).

Although the same summary judgment rules apply to a party proceeding pro se, special latitude is appropriate to ensure that a meritorious claim is not foreclosed simply because the papers submitted in opposition to the motion are inartfully worded. See McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (pleadings should be read liberally and interpreted to "raise the strongest arguments that they suggest") (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). By the same token, however, a pro se party's "bald assertion[], completely unsupported by evidence," is not sufficient to overcome a motion for summary judgment. Pointdujour v. Mount Sinai Hosp., 121 F. App'x 895, 898 (2d Cir. 2005) (quoting Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991)). Consequently, "when an employer provides convincing evidence to explain its conduct and the plaintiff's argument consists of purely conclusory allegations of discrimination, the Court may conclude that no material issue of fact exists and it may

grant summary judgment to the employer." Risco v. McHugh, 868 F. Supp. 2d 75, 98

(S.D.N.Y. 2012) (internal quotation marks and citation omitted).

III.   Applicable Law

    A.   Discrimination

        Title VII provides that "[i]t shall be an unlawful employment practice for an

employer to discharge any individual, or otherwise to discriminate against any individual

with respect to [her] compensation, terms, conditions, or privileges of employment,

because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. §

2000e-2(a)(1).  To overcome a motion for summary judgment by an employer, "a Title

VII plaintiff must satisfy a three-part burden-shifting test" set forth in McDonnell

Douglas Corp. v. Green, 411 U.S. 792 (1973).  Dawson v. Bumble & Bumble, 398 F.3d

211, 216 (2d Cir. 2005).  Under that rubric, the plaintiff must satisfy an initial burden of

"proving by the preponderance of the evidence a prima facie case of discrimination."

Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).  To establish a

prima facie case, an employee must show that:  (1) she was within the protected class; (2)

she was qualified for the position; (3) she was subjected to an adverse employment

decision or discharge; and (4) the adverse action occurred under circumstances giving rise

to an inference of discrimination.  See Reynolds v. Barrett, 685 F.3d 193, 202 (2d Cir.

2012).

        "A plaintiff sustains an adverse employment action if he or she endures a

materially adverse change in the terms and conditions of employment.  To be materially

adverse[,] a change in working conditions must be more disruptive than a mere
inconvenience or an alteration of job responsibilities." Galabya v. N.Y.C. Bd. of Educ.,
202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks and citation omitted).  Among
the actions that qualify as materially adverse are "a termination of employment, a
demotion evidenced by a decrease in wage or salary, a less distinguished title, a material
loss of benefits, [or] significantly diminished material responsibilities." Id.  As the
Second Circuit emphasized in Galabya, however, "other indices . . . unique to a particular
situation" also could be considered materially adverse.  Id.

   Once the plaintiff makes out a prima facie case, "a rebuttable presumption
of discrimination arises and the burden then shifts to the defendant to articulate a
legitimate, nondiscriminatory reason for the employment decision." Sharpe v. MCI
Commc'ns Servs., Inc., 684 F. Supp. 2d 394, 401 (S.D.N.Y. 2010) (citation omitted).
The purpose of this step is "to force the defendant to give an explanation for its conduct,
in order to prevent employers from simply remaining silent while the plaintiff founders
on the difficulty of proving discriminatory intent." Felder v. Securiticus Sec. Servs., No.
04 Civ. 9501 (LAK) (FM), 2006 WL 2627969, at *7 (S.D.N.Y. Sept. 12, 2006) (quoting
Fisher v. Vassar Coll., 114 F.3d 1332, 1335-36 (2d Cir. 1997) (en banc)).

   Finally, if the defendant provides a non-discriminatory rationale for its
conduct, the rebuttable presumption drops out of the case.  St. Mary's Honor Ctr. v.
Hicks, 509 U.S. 502, 510-11 (1993).  The burden then rests on the plaintiff to prove not
only that the proffered nondiscriminatory reason was pretextual, but also that the

defendant discriminated against the plaintiff.  Slattery v. Swiss Reins. Am. Corp., 248

F.3d 87, 93 (2d Cir. 2001).  In other words, "the burden shifts back to the plaintiff to

prove that discrimination was the real reason for the employment action."  Graham v.

Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

       Ultimately, "the bottom line . . . is, simply, whether plaintiff has presented

sufficient evidence from which a reasonable trier of fact could determine that defendants

discriminated against her."  Goldman v. Admin. for Children's Servs., No. 04 Civ. 7890

(GEL), 2007 WL 1552397, at *5 (S.D.N.Y. May 29, 2007); see also Reeves v. Sanderson

Plumbing Prods., Inc., 530 U.S. 133, 143 (2000) ("Although intermediate evidentiary

burdens shift back and forth under [the McDonnell Douglas] framework, the ultimate

burden of persuading the trier of fact that the defendant intentionally discriminated

against the plaintiff remains at all times with the plaintiff.") (internal quotation marks and

citation omitted).

      B.    Retaliation

       Title VII also makes it unlawful for an employer to retaliate against an

employee who has exercised her statutory right to complain about conduct that she

considers discriminatory.  42 U.S.C. § 2000e-3(a).  A retaliation claim is "not dependent

on the merits of the underlying discrimination complaint."  Davis v. State Univ. of N.Y.,

802 F.2d 638, 642 (2d Cir. 1986).  Thus, to establish a prima facie case of retaliation, an

employee need only show that:  (1) the employee engaged in a protected activity; (2) the

employer knew of this activity; (3) the employer took adverse action against the

employee; and (4) there was a causal relation between the adverse action and the employee's protected activity. Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001).

Mere temporal proximity between a plaintiff's protected activity and an adverse employment action is sufficient to create an inference of retaliation for purposes of proving a prima facie case. El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010). Without more, however, temporal proximity "is insufficient to satisfy [the plaintiff's] burden to bring forward some evidence of pretext." Id.

IV.    Application of Law to Facts

A.    Claims Against Paris

Paris argues at the outset that Mack (1) failed to exhaust her administrative remedies with respect to her gender discrimination claim, (see ECF No. 28 (Paris' Mem. in Supp. of Mot. for Summ. J. ("Paris Mem.")) at 14-15), and (2) did not include a retaliation claim in her Complaint, (see id. at 15-16). To bring a Title VII claim, an employee must, of course, exhaust her administrative remedies. See Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001). Moreover, claims not raised in a plaintiff's complaint ordinarily cannot be considered by the Court. See, e.g., Beckman v. U.S. Postal Serv., 79 F. Supp. 2d 394, 407 (S.D.N.Y. 2000) ("[I]t is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment."). There is no need to rely on these procedural rules in this pro se action, however, because all of Mack's claims against Paris also lack substantive merit.

1.      Discrimination

a.      Prima Facie Case

It is undisputed that Mack is a Black female, and thus a member of two protected classes.  She also unquestionably suffered an adverse employment action when she was terminated in July 2013.  Paris nevertheless contends that Mack cannot establish a prima facie case of discrimination both because she was not qualified for her position, (see Paris Mem. at 10-11), and because she cannot demonstrate that her termination occurred under circumstances giving rise to an inference of discrimination, (see id. at 11-13).

i.      Qualification for Position

To show she was qualified for her position for purposes of a prima facie case, Mack need only "demonstrate that she 'possesses the basic skills necessary for performance of [the] job.'"  Owens v. N.Y.C. Hous. Auth., 934 F.2d 405, 409 (2d Cir. 1991) (quoting Powell v. Syracuse Univ., 580 F.2d 1150, 1155 (2d Cir. 1978)) (alteration in original); see also Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 92 (2d Cir. 2001) ("[E]specially where discharge is at issue and the employer has already hired the employee, the inference of minimal qualification is not difficult to draw.") (citation omitted).

Mack worked as a janitor for Paris for approximately nine years before her first disciplinary infraction, and in housekeeping and maintenance for decades before that. (Loiodice Aff. ¶¶ 7-10; see also Pl.'s Paris Resp. at 1-2).  Although Paris bases its

14

assertion that Mack was not qualified to be a janitor in the first instance on her extensive disciplinary history, misconduct that "provide[s] a legitimate and non-discriminatory reason to terminate an employee . . . is distinct . . . from the issue of minimal qualification to perform a job." Owens, 934 F.2d at 409; see also Slattery, 248 F.3d at 92 ("The qualification prong must not . . . be interpreted in such a way as to shift onto the plaintiff an obligation to anticipate and disprove, in [her] prima facie case, the employer's proffer of a legitimate, non-discriminatory basis for its decision."); Jagmohan v. Long Island R.R. Co., 622 F. App'x 61, 63 (2d Cir. 2015) (fact that employee's disciplinary history made him ineligible for a promotion was irrelevant to whether he was qualified for his current position). Accordingly, Mack has made a prima facie showing that she was qualified for her position.

### ii.      Inference of Discrimination

Mack could, of course, raise an inference of discrimination by showing that she was subject to disparate treatment because Paris treated her "less favorably than similarly situated persons outside of [her] protected class." Maturine v. Am. Int'l Grp., Inc., No. 04 Civ. 9064 (GBD), 2006 WL 3206098, at *5 (S.D.N.Y. Nov. 6, 2006) (citing Graham, 230 F.3d at 40). A plaintiff seeking to make such a prima facie showing must establish, however, that the other employees had a "situation sufficiently similar . . . to support at least a minimal inference that the difference of treatment may be attributable to discrimination." McGuinness v. Lincoln Hall, 263 F.3d 49, 54 (2d Cir. 2001).

15

Mack bases her claim of unlawful discrimination principally upon Paris'
decision to suspend but not terminate Rodriguez for also being off post on July 18, 2013.
(See, e.g., Compl. at 3).  Mack evidently believes that Paris reached this decision because
Rodriguez is of a different race.[7]  In addition, Paris concedes that Mack and Rodriguez
are "similarly situated . . . because they are [both] subject to the same disciplinary rules
and procedures."  (Paris Mem. at 12).  At least for present purposes, therefore, Mack has
shown that she was treated differently than a similarly situated employee belonging to a
different protected class.[8]  Accordingly, Mack has established a prima facie case of race
discrimination.

Although Mack did not elaborate in her Complaint about the basis for her
gender discrimination claim, she suggested at her deposition that Paris' male employees
received only verbal – not written – warnings for disciplinary infractions.  (Tr. 46-47, 50-
52, 66-67, 83).  She admitted during the same deposition, however, that she had no
personal knowledge of any other employee receiving a written warning.  (See id. at 62-
63, 84-85, 91, 96-97).  Mack's burden in establishing her prima facie case is "minimal,"

---

[7]      The record contains conflicting evidence regarding Rodriguez's race:  although
the Union believes Rodriguez is Hispanic, (see Union 56.1 Stmt. ¶ 20; Kartzian Decl. ¶ 18),
Paris believes she is Black, (see Loiodice Aff. ¶¶ 62, 69).  For present purposes, I will assume
that she is a member of a different protected class than Mack.

[8]      This is not a foregone conclusion.  Rodriguez had only two prior written
warnings, compared to Mack's eight prior written warnings and two prior suspensions, (see
Loiodice Aff. ¶¶ 62, 70), suggesting that Mack and Rodriguez were not similarly situated, see,
e.g., Chinnery v. N.Y.S. Office of Children & Family Servs., No. 10 Civ. 882 (DAB) (FM), 2014
WL 1651950, at *10 (S.D.N.Y. Apr. 25, 2014) (plaintiff with error rate more than four times
worse that of any other employee not similarly situated).  Again, however, for purposes of
summary judgment, I will assume that Mack and Rodriguez are similarly situated.

Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001), but not non-existent.

Moreover, Paris has presented evidence that male employees did, in fact, receive written

warnings, as well as more serious discipline.  (See Loiodice Aff. ¶¶ 62, 66).  Mack

therefore has failed to establish a prima facie case of gender discrimination.  For that

reason, the only discrimination claim that requires further analysis is Mack's assertion

that she was the victim of race discrimination.

> b.   Nondiscriminatory Rationale

Paris contends that the decision to terminate Mack came after a "review of

Ms. Mack's long history of disciplinary action and the gravity of her most recent

offense."  (Id. ¶ 55).  Paris also notes that employees of other races were subject to formal

disciplinary action up to and including termination.  (See id. ¶¶ 62-63).  Indeed, Paris has

provided the Court with a list of individuals who were terminated, suspended, or received

written warnings.  The list, which also identifies the employees' races, demonstrates that

White, Black, and Hispanic employees all were subject to disciplinary action for poor job

performance, excessive absenteeism, and being off post.  Notably, none of those other

employees had nearly as many infractions as Mack.  (Id. ¶ 62).  In fact, according to

Paris, Mack's eight prior written warnings and two suspensions constituted "by far" the

worst disciplinary record of any Paris employee.  (Id. ¶ 72).  This distinction

unquestionably constitutes a valid nondiscriminatory basis for Mack's termination.  The

burden therefore shifts to Mack, who must show that Paris' proffered rationale for her

termination was pretextual.  Hicks, 509 U.S. at 510-11.

17

c.    <u>Pretext</u>

Pretext may be established "either by persuading the Court that a

discriminatory reason more likely motivated the employer, or by showing [the

employer]'s explanation is not credible." <u>Clifford v. Cnty. of Rockland</u>, No. 10 Civ. 6979

(VB), 2012 WL 2866268, at *6 (S.D.N.Y. June 25, 2012) (citing <u>Burdine</u>, 450 U.S. at

256).  Here, however, no reasonable juror could conclude either that a discriminatory

reason more likely motivated Paris' business decision to terminate Mack, or that Paris'

explanation for its decision is not credible.

Beginning in 2010, Paris repeatedly disciplined Mack for poor job

performance and absenteeism, (Loiodice Aff. ¶¶ 10, 16, 20, 24, 28, 32, 36, 40, 44, 48;

Union 56.1 Stmt. ¶¶ 8-12, 13-16), and cautioned her that further infractions would result

in more serious consequences, (<u>see, e.g.</u>, ECF Nos. 27-10, 27-11, 27-15 (relevant

grievances)).  Nothing about Paris' imposition of discipline or efforts to convince Mack

to improve her performance suggests discriminatory animus rather than a concern for the

quality and quantity of Mack's work.

The only admissible evidence that Mack is able to cite with respect to this

issue is that she was terminated for being off post, while Rodriguez was not.  This

comparison, however, ignores the two employees' markedly different disciplinary

histories.  (<u>See</u> Loiodice Aff. ¶¶ 62, 70).  Mack also suggests that she was disciplined, and

ultimately terminated, because Beltramello, her supervisor, was a racist.  (Tr. 56-57, 70,

133).  She admitted at her deposition, however, that she never heard him mention her

18

race.  (Id.).[9]  Her "personal opinion," unsupported by any evidence of racial animus,

obviously cannot change the result.  See Risco, 868 F. Supp. 2d at 104 (plaintiff's "claim

that she was falsely accused of workplace violence and subjected to false write-

ups . . . [did] not give rise to an inference that [her supervisor's] conduct was motivated

by bias.") (internal quotation marks and citation omitted).

        Accordingly, Mack has failed to rebut Paris' nondiscriminatory reason for

terminating Mack's employment.  Paris is therefore entitled to summary judgment with

respect to Mack's claim of race discrimination.

        2.     Hostile Work Environment

        An employee also may suffer discriminatory treatment in violation of Title

VII if required to work in a hostile or abusive environment.  See Gregory v. Daly, 243

F.3d 687, 691 (2d Cir. 2001).  Liberally construed, Mack's filings may be read to assert

---

[9]     The only evidence of Beltramello's alleged "racism" that Mack could recall is, in
fact, wholly unrelated:

> Mack:     My personal opinion is that he did not like me and I
> don't think he cared for black people as well, either.
> He has a funny way about himself and the words
> that come out of his mouth make me think he was a
> racist.
>
> Question:     What kind of words, ma'am?
>
> Mack:     One time I remember him – I always be singing
> about God and he had something like that like
> "Where your God at now?" or "F your God."
> Something, I can't remember.

(Id. at 56).

not only a disparate treatment discrimination claim, but also a hostile work environment

discrimination claim.

To prevail on such a claim, a plaintiff must prove that (a) she subjectively

perceived the environment to be abusive, (b) her working environment was "objectively

hostile," and (c) a specific basis exists for imputing the hostile conduct to the employer.

See Howley v. Town of Stratford, 217 F.3d 141, 153-54 (2d Cir. 2000); Pronin v. Raffi

Custom Photo Lab., Inc., 383 F. Supp. 2d 628, 633-34 (S.D.N.Y. 2005); O'Dell v. Trans

World Entm't Corp., 153 F. Supp. 2d 378, 385 (S.D.N.Y. 2001).  Mere "workplace

bullying" is not enough to give rise to an actionable hostile work environment claim.

Rather, there must be a showing that the conduct occurred because of the employee's

membership in a protected class.  Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002).

To determine whether a work environment is "objectively hostile," a court

must examine all of the circumstances, including the "frequency of the discriminatory

conduct; its severity; whether it is physically threatening or humiliating, or a mere

offensive utterance; and whether it unreasonably interferes with an employee's work

performance."  Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).  "[H]arassment is

actionable . . . only if it is so severe or pervasive as to alter the conditions of [the victim's]

employment and create an abusive working environment."  Clark Cnty. Sch. Dist. v.

Breeden, 532 U.S. 268, 270 (2001) (quoting Faragher v. City of Boca Raton, 524 U.S.

775, 786 (1998)) (second brackets in original; internal quotations marks omitted).

Isolated incidents of harassment, unless "extremely serious," thus are not sufficient to

give rise to a hostile work environment claim.  See id. at 271; see also Perry v. Ethan

Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997) (incidents of harassment must be "more

than episodic; they must be sufficiently continuous and concerted in order to be deemed

pervasive") (citation omitted).

   Mack alleges that, after being transferred to Metrotech Center, she was

"harassed every day" and "forced to work in a hostile environment where [she was]

threatened and belittled . . . constant[ly]."  (Compl. at 7-8).  In support of this claim,

however, Mack asserts only that she was (a) not allowed to take her full breaks because

she was responsible for cleaning more bathrooms than other janitors, and (b) forced to

take pictures with her personal cell phone to prove that she had cleaned her bathrooms.

(Id. at 8).  Mack has not adduced any evidence that this or any other alleged workplace

hostility occurred because of her race.  Even in combination with the isolated incident of

Beltramello's "racism" described by Mack at her deposition, (Tr. 56), these allegations

are insufficient to support a hostile work environment claim.  Paris consequently is

entitled to summary judgment with respect to any such potential claim.

   3. Retaliation

   Mack also contends that she was "singled out and made to be a mortar [sic]

of unjust treatment" following her successful Union grievance of her June 2011 dismissal

from BMCC.  (Pl.'s Paris Resp. at 1).  Mack, however, has failed to establish two of the

four elements of a prima facie case of retaliation under Title VII:  (a) that her successful

June 2011 Union grievance was a form of protected activity; and (b) that there was a

causal connection between that grievance and her July 2013 termination.

a.     Protected Activity

A union grievance can constitute protected activity if it concerns

discrimination, but union grievances that complain of matters other than discrimination

do not constitute protected activity for purposes of Title VII.  See, e.g., Melie v.

EVCI/TCI Coll. Admin., 374 F. App'x 150, 153 n.* (2d Cir. 2010); Forest v. N.Y.S.

Office of Mental Health, No. 13 Civ. 1762 (KBF), 2015 WL 6965149, at *7 (S.D.N.Y.

Nov. 10, 2015) (grievance concerning a change in work schedule with "no relationship to

unlawful conduct" not protected activity); Clemente v. N.Y.S. Div. of Parole, No. 01 Civ.

3945 (TPG), 2004 WL 1900330, at *13 (S.D.N.Y. Aug. 24, 2004) (union grievances did

not qualify as protected activity absent any indication that they alleged discrimination);

see also 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an

employer to discriminate against any of [its] employees . . . because [s]he has opposed

any practice made an unlawful employment practice by this subchapter.").

Mack has not adduced any evidence that she filed her June 2011 Union

grievance because she believed her dismissal from BMCC was motivated by

discrimination.  In fact, it appears that, like her grievance regarding her July 2013

termination, Mack filed that earlier grievance simply to protest the termination as unjust.

(Kartzian Decl. ¶ 12; see also Asad Decl. ¶ 6 (Union did not investigate possibility that

the 2013 termination was discriminatory until Mack first suggested that in her GAB

appeal)).  Furthermore, Mack never filed a complaint under Paris' EEO Policy or a charge

of discrimination with the EEOC, NYSDHR, or NYCCHR regarding her June 2011

dismissal from BMCC.  (Tr. 33; Loiodice Aff. ¶ 58).

 In any event, it is clear from both BMCC's letter demanding Mack's

termination and Paris' letter informing Mack of the termination that Paris initially

attempted to oppose BMCC's demand that Mack be terminated.  (See BMCC Letter;

Paris Letter).  Mack also testified that her supervisor during her time at BMCC was a

woman named "Neta," (Tr. 21), not Beltramello, whom she identified as the primary, if

not sole, source of "racism" against her at Paris, (see id. at 56-57, 70, 133).

 Accordingly, Mack has failed to make a prima facie showing that her

successful June 2011 Union grievance was a form of activity protected under Title VII.[10]

### b. Causal Connection

 Even if Mack were able to show that her June 2011 Union grievance

constituted protected activity, her retaliation claim would fail for lack of a causal

connection between that activity and her termination two years later.  "[P]roof of

causation can be shown either:  ([i]) indirectly, by showing that the protected activity was

followed closely by discriminatory treatment, or through other circumstantial evidence

such as disparate treatment of fellow employees who engaged in similar conduct; or ([ii])

directly, through evidence of retaliatory animus directed against the plaintiff by the

---

[10] Of course, while it clearly was a protected activity, Mack's filing of her EEOC
Charge came after she was terminated and thus cannot serve as the basis for a retaliation claim.

defendant." Gordon v. N.Y.C. Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000) (citation omitted).  Mack has presented no such evidence in this case.

Mere temporal proximity between a plaintiff's protected activity and an adverse employment action is sufficient to create an inference of retaliation for purposes of proving a prima facie case.  El Sayed, 627 F.3d at 933.  Here, however, over two years elapsed between the filing of Mack's successful June 2011 Union grievance and her July 2013 termination.  It is clear that this is well outside the bounds of temporal proximity sufficient to support an inference of retaliation.  See, e.g., Chamberlin v. Principi, 247 F. App'x 251, 254 (2d Cir. 2007) (causal relationship not established when adverse employment action occurred five months after filing EEOC charge); Nicastro v. N.Y.C. Dep't of Design and Constr., 125 F. App'x 357, 358 (2d Cir. 2005) (demotion ten months after protected activity not close enough in time to "demonstrate a causal nexus").

Nor can the progressive discipline that led to Mack's July 2013 termination help bridge the gap in time between her June 2011 Union grievance and her eventual termination in order to establish her prima facie case.  Although the adverse employment action element is broader for retaliation claims than discrimination claims, see Hahn v. Bank of Am. Inc., No. 12 Civ. 4151 (DF), 2014 WL 1285421, at *14 (S.D.N.Y. Mar. 31, 2014) (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67 (2006)), Mack's first suspension was in April 2013, (see Loiodice Aff. ¶ 36; Union 56.1 Stmt. ¶ 13), nearly two years after her successful June 2011 Union grievance.  The Second Circuit has held that oral and written warnings are not "materially adverse" in the view of

a reasonable employee.  Chang v. Safe Horizons, 254 F. App'x 838, 839 (2d Cir. 2007).

Even if that were not so, Mack's first written warning after her successful June 2011

Union grievance was in March 2012, well outside the temporal proximity range that

might warrant an inference of retaliation.  See Clark Cnty. Sch. Dist., 532 U.S. at 273

("The cases that accept mere temporal proximity between an employer's knowledge of

protected activity and an adverse employment action as sufficient evidence of causality to

establish a prima facie case uniformly hold that the temporal proximity must be 'very

close'") (quoting O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1253 (10th Cir. 2001));

Murray v. Visiting Nurse Serv. of N.Y., 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007)

(courts "have consistently held that the passage of two to three months between the

protected activity and the adverse employment action does not allow for an inference of

causation.").  Mack also was disciplined once before her successful grievance.  (See

Loiodice Aff. ¶ 10).  Where "gradual adverse job actions began well before the plaintiff

had ever engaged in any protected activity, an inference of retaliation does not arise."

Slattery, 248 F.3d at 95.

Accordingly, Mack has failed to establish, either inferentially or directly, a

causal connection between activity protected under Title VII and her termination.  Paris

therefore is entitled to summary judgment with respect to this claim.

B.    Claims Against the Union

As a preliminary matter, the Union argues that Mack failed to exhaust her

administrative remedies with respect to her discrimination claim against the Union.  (See

ECF No. 41 (Union's Mem. in Supp. of Mot. for Summ. J. ("Union Mem.")) at 7-8.

Although Mack insists that she did name the Union in her EEOC Charge, (Pl.'s Union

Resp. at 2), it is clear from the cover page of her EEOC Charge that she did not, (see

EEOC Charge at 1).  In any event, even if Mack had named the Union in her EEOC

Charge, her discrimination claim still would lack substantive merit.

      1.    <u>Discrimination</u>

      Discrimination by unions is prohibited by Title VII, which makes it "an

unlawful employment practice for a labor organization . . . to exclude or to expel from its

membership, or otherwise to discriminate against, any individual because of his race,

color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(c)(1); <u>see</u> <u>Yerdon v. Henry</u>,

91 F.3d 370, 375 (2d Cir. 1996) (labor union liable under Title VII).  A Title VII claim

brought against a union, however, is evaluated differently than such a claim against an

employer.  To succeed on her claim, Mack first must show that "the [u]nion breached its

duty of fair representation to [her]."  <u>Oparaji v. United Fed. of Teachers</u>, 418 F. Supp. 2d

139, 146 (E.D.N.Y. 2006).  A union breaches its duty of fair representation when (a) "its

conduct toward a member . . . is arbitrary, discriminatory, or in bad faith," <u>Marquez v.</u>

<u>Screen Actors Guild, Inc.</u>, 525 U.S. 33, 44 (1998), and (b) the alleged misconduct injures

the plaintiff, <u>Spellacy v. Airline Pilots Assoc.-Int'l</u>, 156 F.3d 120, 130 (2d Cir. 1998).  If

Mack establishes a breach of the duty of fair representation, she then "must show some

indication that the union's actions were motivated by unlawful discrimination or

retaliation."  <u>Oparaji</u>, 418 F. Supp. 2d at 146 (citation omitted).

Mack is unable to show either that the Union's decision not to arbitrate the grievance regarding her July 2013 termination breached its duty of fair representation or that it was motivated by unlawful discrimination.  A union's decision not to press a particular employee's grievance is owed wide deference, and it is well established that an employee has no absolute right to have her grievance arbitrated.  Smith v. Drug, Chem., Cosmetic, Plastics & Affiliated Indus. Warehouse Emps. Local 815, 943 F. Supp. 224, 242 (E.D.N.Y. 1996) (citing Vaca v. Sipes, 386 U.S. 171, 190 (1967)).  Moreover, there is no arbitrariness, discrimination, or bad faith in "failing to process a bad case." Wozniak v. U.A.W., Local 897, 842 F.2d 633, 636 (2d Cir. 1988); accord Cruz v. Local Union No. 3 of the IBEW, 34 F.3d 1148, 1153-54 (2d Cir. 1994).  Nor is the duty of fair representation breached when a union "fails to process a grievance due to error in evaluating the merits of the grievance."  Cruz, 34 F.3d at 1154.

Here, it is clear that the Union decided not to process Mack's July 2013 grievance because of her long history of prior disciplinary infractions and the fact that she admitted that she had left the Metrotech Center premises during her shift.  (See Union Letter).  Even if the Union misapprehended the facts, Mack presents absolutely no evidence that could lead a reasonable juror to conclude that the Union's conduct was motivated by unlawful discrimination on the basis of her race (or her gender, for that matter).  Accordingly, the Union's motion should be granted as to Mack's discrimination claim.

2.      Duty of Fair Representation

Finally, as the Union acknowledges, Mack's submissions could be read to allege that the Union breached its duty of fair representation under the National Labor Relations Act ("NLRA") by failing to arbitrate her July 2013 grievance.  (See Union Mem. at 6-7).  The NLRA requires a labor organization, as the exclusive representative of the employees in a bargaining unit, "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct."  Marquez, 525 U.S. at 44 (quoting Sipes, 386 U.S. at 177).  The Union is correct, however, that any such claim in this case would be barred by the statute of limitations.

In the Second Circuit, the statute of limitations for duty of fair representation claims is six months.  See Eatz v. DME Unit of Local Union No. 3 of I.B.E.W., 794 F.2d 29, 33 (2d Cir. 1986); Waterman v. Transport Workers' Union Local 100, 8 F. Supp. 2d 363, 368 (S.D.N.Y. 1998).  Moreover, "a cause of action based on the duty of fair representation accrues when the union member[] know[s] or reasonably should know that a breach of that duty has occurred."  Eatz, 794 F.2d at 33.  Here, Mack knew of the Union's decision not to arbitrate shortly after August 26, 2013.  (Union Letter; see also Loiodice Aff. ¶ 56; Kartzian Decl. ¶ 13).  After Mack appealed that decision on September 4, 2013, she knew no later than the end of November 2013 that the GAB, and then the Union's Executive Board, had upheld the Union's decision.  (Tr. 119-20, 164; Loiodice Aff. ¶ 57; Kartzian Decl. ¶¶ 20-21).  Mack did not file the Complaint in

28

this action, however, until August 25, 2014.  (Compl.).  Accordingly, to the extent Mack

alleges a duty of fair representation claim, it clearly is barred by the six-month statute of

limitations.

V.       Conclusion

           For the foregoing reasons, the Defendants' motions for summary judgment,

(ECF Nos. 26, 32), should be granted and this action dismissed.

VI.      Notice of Procedure for Filing Objections to this Report and Recommendation

           The parties shall have fourteen (14) days from the service of this Report and

Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule

72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a) and (d).  Any

such objections shall be filed with the Clerk of the Court, with courtesy copies delivered

to the chambers of the Honorable George B. Daniels, to my chambers at the United States

Courthouse, 500 Pearl Street, New York, N.Y. 10007, and to any opposing parties.  See

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).  Any requests for an extension of

time for filing objections must be directed to Judge Daniels.  The failure to file these

timely objections will result in a waiver of those objections for purposes of appeal.  See

Thomas v. Arn, 474 U.S. 140 (1985); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d),

72(b).

        SO ORDERED.

Dated:      New York, New York
             February 22, 2016

                                  FRANK MAAS
                       United States Magistrate Judge

Copies to Defense counsel (via ECF)

Cecelia Catherine Mack (via U.S. Mail)
177 Willis Ave., #4G
Bronx, New York 10454